United States District Court
Southern District of Texas

**ENTERED**

November 09, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH HENDRICKS, | § | |
| TDCJ #02045578, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-22-1095 |
| | § | |
| BOBBY LUMPKIN, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Texas state inmate Keith Hendricks filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 and a memorandum in support of his petition, challenging his convictions and sentences for aggravated sexual assault. (Dkts. 1, 2). The respondent, Bobby Lumpkin, answered with a motion for summary judgment. (Dkt. 16). Hendricks has filed a response to the motion. (Dkt. 23). Based on careful consideration of the pleadings, the record, and the applicable law, the Court concludes that Hendricks has not stated meritorious grounds for federal habeas relief. The Court therefore grants the respondent's motion for summary judgment, denies Hendricks's § 2254 petition, and, by separate order, enters final judgment. The reasons are explained below.

## I.     **BACKGROUND**

### A.     **Procedural Background**

In 2016, a jury in the 176th District Court for Harris County, Texas, found

Hendricks guilty of two counts of aggravated sexual assault in Cause Numbers

1438707 and 1438708. (Dkts. 17-2, pp. 101-03; 17-3, pp. 96-98). Based on the

verdicts and the enhancements the jury found true, the court sentenced Hendricks to

two concurrent terms of life in prison. (*Id.*). The First Court of Appeals affirmed

Hendricks's convictions and sentences. *See Hendricks v. State*, No. 01-16-00072-

CR & 01-16-00085-CR, 2017 WL 711741, at *1 (Tex. App.—Houston [1st Dist.]

Feb. 23, 2017, pet. ref'd) (mem op., not designated for publication). The Texas

Court of Criminal Appeals refused Hendricks's petitions for discretionary review.

*See Hendricks v. State*, PD-200-17 & PD-201-17 (Tex. Crim. App. Apr. 12, 2017)

(Dkts. 17-20, 17-31).

After his direct appeal was final, Hendricks filed applications for a state writ

of habeas corpus in each case, raising five claims of ineffective assistance of counsel.

(Dkts. 18-12, pp. 7-24; 18-27, pp. 7-24). The state habeas trial court entered findings

of fact and conclusions of law in each case. (Dkts. 18-6, pp. 29-39; 18-24, pp. 7-

18). The Court of Criminal Appeals denied the petitions without written order on

findings of the trial court without a hearing and on the court's independent review

2

of the record on March 9, 2022. *Ex parte Hendricks*, Writ Nos. 89,505-02 & 89,505-

03. (Dkts. 18-7, 18-25).

Hendricks now seeks federal habeas corpus relief in a petition filed on March

31, 2022. (Dkt. 1). He raises the following claims:

1. Trial counsel provided ineffective assistance by

    a. failing to investigate Hendricks's statement that he was never at the location where the offense allegedly occurred; and

    b. failing to file a motion to quash the probable cause complaint;

2. Trial counsel provided ineffective assistance by failing to file motions:

    a. challenging the victim's competency; and

    b. requesting the appointment of a psychiatrist to evaluate the victim's mental state;

3. Trial counsel provided ineffective assistance by failing to present an adequate and effective defense;

4. Trial counsel provided ineffective assistance by failing to request the appointment of a defense medical expert to evaluate medical records and assist with cross-examination of the victim;

5. Trial counsel provided ineffective assistance by failing to preserve multiple errors for appeal.

(Dkts. 1, pp. 6-12; 2, pp. 1-30). Hendricks asks the Court to vacate his convictions

and sentences and order either his discharge or a new trial. (Dkt. 2, p. 29).

The respondent answered with a motion for summary judgment, asserting that none of Hendricks's claims have merit. (Dkt. 16). Hendricks filed a timely response to the motion. (Dkt. 23).

## B.    Factual Background

The First Court of Appeals summarized the facts of the case as follows:

In 2013, complainant Jane Doe, a woman in her early twenties with mental illness, became homeless and began staying at a shelter in downtown Houston. One day, she met Hendricks—whom she knew as "Kevin," "Slim," or "Chicago Slim"—and the two went for a walk in Houston's Third Ward.

Hendricks led Doe to an abandoned house, promising to provide her with clothes and cigarettes. Once inside, Hendricks shut the door, instructed Doe to take off her clothes, and threatened to kill her if she did not comply. Hendricks then sexually assaulted Doe, beating and choking her as she faded in and out of consciousness. When Hendricks let her go, Doe ran out of the house and flagged down a motorist, who called 911.

When Officer G. Jackson arrived, he found EMS treating Doe. Jackson observed that Doe appeared "traumatized" and had "fresh" injuries to her face and knees. Jackson asked Doe what happened, and Doe told him that she had been sexually assaulted by a man named "Kevin" or "Slim."

EMS transported Doe to the hospital, where she was examined by Tiffany Dusang, a forensic nurse. Dusang observed that Doe had multiple injuries, including bleeding from her ear canal; bruising, abrasions, and scratch marks on her mouth, chin, chest, shoulders, and neck; and numerous vaginal and anal tears. Dusang characterized Doe's injuries as "significant" and consistent with both sexual assault and strangulation.

During its investigation, the State confirmed that Hendricks went by the name "Slim" and lived under the freeway in the Third Ward. A week after the assault, Doe identified Hendricks as her assailant in a photo array. A sample of Hendricks's DNA matched the DNA found on Doe. Hendricks's DNA also matched the DNA found on three other mentally ill, homeless women who had previously reported being sexually assaulted in the Third Ward. We will refer to these women as Doe 2, Doe 3, and Doe 4. Evidence about these three prior sexual assaults was admitted during Hendricks's trial.

The jury found Hendricks guilty of two counts of aggravated sexual assault. After finding an enhancement paragraph true, the trial court sentenced Hendricks to confinement for life.

*Hendricks v. State*, No. 01-16-00072-CR & 01-16-00085-CR, 2017 WL 711741, at

*1 (Tex. App.—Houston [1st Dist.] Feb. 23, 2017, pet. ref'd) (mem op., not

designated for publication) (footnote omitted).

## II.   **LEGAL STANDARDS**

### A.   **The Antiterrorism and Effective Death Penalty Act**

Hendricks's petition for federal habeas corpus relief is governed by the

Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254; *see*

*also Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Lindh v. Murphy*, 521 U.S.

320, 335-36 (1997). Review under AEDPA is "highly deferential" to the state

court's decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). To

merit relief under AEDPA, a petitioner may not simply point to legal error in the

state court's decision. *See White v. Woodall*, 572 U.S. 415, 419 (2014) (stating that

being "merely wrong" or in "clear error" will not suffice for federal relief under

AEDPA).  Instead, AEDPA requires inmates to "show that the state court's ruling

on the claim being presented in federal court was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any

possibility for fair[-]minded disagreement."  *Id.* at 419-20 (quoting *Harrington v.

Richter*, 562 U.S. 86, 103 (2011)).  "If this standard is difficult to meet, that is

because it was meant to be."  *Richter*, 562 U.S. at 102.

Under AEDPA, federal habeas relief cannot be granted on claims that were

adjudicated on the merits by the state courts unless the state court's decision (1) "was

contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States" or (2) "was based on

an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8

(2002) (per curiam); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).  The first

provision applies to question of law or mixed questions of law and fact, while the

second applies to questions of fact.

On questions of law or mixed questions of law and fact, this Court may grant

habeas relief only if the state-court decision "was contrary to, or involved an

unreasonable application of, clearly established" Supreme Court precedent.  *Richter,

562 U.S. at 97-98.  The "contrary to" clause applies "if the state court applies a rule

different from the governing law set forth in our cases, or if it decides a case

differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Broadnax v. Lumpkin*, 987 F.3d 400, 406 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 859 (2022). The "unreasonable application" clause applies "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Bell*, 535 U.S. at 694; *Broadnax*, 987 F.3d at 406. Under this clause, to merit relief the state court's determination "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (cleaned up).

On questions of fact, this Court may grant habeas relief only if the state habeas court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the state[-]court proceeding." *See* 28 U.S.C. § 2254(d)(2); *Martinez v. Caldwell*, 644 F.3d 238, 241-42 (5th Cir. 2011). The findings of the state court are "presumed to be correct," and a petitioner seeking to rebut that presumption must do so with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### B.    Summary-Judgment Standard

The respondent answered Hendricks's petition with a motion for summary judgment. In ordinary civil cases, a district court considering a motion for summary judgment must construe the facts of the case in the light most favorable to the non-

moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). And

"[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating

to summary judgment, applies with equal force in the context of habeas corpus

cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). But AEDPA modifies

summary-judgment principles in the habeas context, and Rule 56 "applies only to

the extent that it does not conflict with the habeas rules." *Smith v. Cockrell*, 311

F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*,

542 U.S. 274 (2004); *see Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir.

2010) (per curiam). "Therefore, § 2254(e)(1)—which mandates that findings of fact

made by a state court are 'presumed to be correct'—overrides the ordinary rule that,

in a summary judgment proceeding, all disputed facts must be construed in the light

most favorable to the nonmoving party." *Smith*, 311 F.3d at 668. Unless the habeas

petitioner can "rebut[] the presumption of correctness by clear and convincing

evidence" as to the state court's findings of fact, they must be accepted as correct.

*Id.*

## III.   DISCUSSION

Hendricks's petition alleges five claims of ineffective assistance of trial

counsel, two of which have several subclaims. Claims of ineffective assistance of

counsel, whether at trial or on direct appeal, are governed by the two-prong test

established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires

a habeas petitioner to show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.* at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

To establish the deficient-performance prong of *Strickland*, a habeas petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. To meet this standard, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment' that *Strickland*'s first prong is satisfied") (citation omitted). In addition, "because of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill

chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)). "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's [sic] the benefit of the doubt, . . . but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (cleaned up) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011)). Therefore, "[o]n habeas review, if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105).

In addition to showing deficient performance, the habeas petitioner alleging ineffective assistance of counsel must also show that he was prejudiced by that deficient performance. *See Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 696). "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

When ineffective assistance of counsel claims are raised in a federal habeas petition, they present mixed questions of law and fact that are analyzed under the "unreasonable application" standard of section 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). AEDPA does not permit *de novo* review of counsel's conduct, *see Richter*, 562 U.S. at 101-02, and a federal court has "no authority to grant habeas corpus relief simply because [it] conclude[s], in [its] independent judgment, that a state supreme court's application of *Strickland* is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (quoting *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (en banc)).

Instead, the "pivotal question" for this Court is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also Visciotti*, 537 U.S. at 27 (holding that the federal habeas scheme "authorizes federal-court intervention only when a state-court decision is objectively unreasonable"). Thus, this Court's review becomes "'doubly

deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Rhoades*, 852 F.3d at 434; *see also Woods v. Etherton*, 578 U.S. 113, 117 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" because "counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and requiring that federal courts "afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013))); *see also Richter*, 562 U.S. at 105 ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so.") (cleaned up). "'If this standard is difficult to meet'—and it is— 'that is because it was meant to be.'" *Burt*, 571 U.S. at 20 (quoting *Richter*, 562 U.S. at 103).

In this case, the Court of Criminal Appeals denied each of Hendricks's ineffective assistance of counsel claims without written order based on the findings of the state habeas trial court without a hearing and on the court's own independent review of the record. (Dkts. 18-7, 18-25). Therefore, this Court considers Hendricks's claims of ineffective assistance under the "doubly deferential" standard. *See Richter*, 562 U.S. at 105.

### A.    Failure to Investigate and File Motions
### (Claims 1A and 1B)

In his first claim, Hendricks alleges that trial counsel Danny Easterling failed to investigate certain facts told to him by Hendricks and, because of that failure, failed to file certain motions.  Hendricks alleges that had the motions been filed, they would have been granted and the outcome of the case would have been different.

#### 1.    Failure to Request a Search Warrant
#### (Claim 1A)

In claim 1A, Hendricks alleges that Easterling provided ineffective assistance by failing to investigate Hendricks's statement that he was never at a blue vacant house with the victim and by failing to act on that information by requesting a search warrant of the house.  (Dkt. 1, p. 5).  Hendricks alleges that Easterling knew that the victim reported that the assault occurred in a blue vacant house in the 3500 block of Hutchins Street and he asserts that Easterling should have filed a motion seeking a search warrant to obtain evidence from the house that could have exculpated Hendricks.  (Dkt. 2, p. 5).  In a supporting unsworn declaration, Hendricks alleges that he told Easterling that an investigation of the alleged crime scene would reveal evidence showing that he did not commit the offense.  (Dkt. 18-12, p. 26).

Easterling responded to this claim by affidavit, alleging as follows:

1 did not feel like it was beneficial or necessary [to file] a Motion to Compel an Evidentiary Search Warrant at the house where the sexual assault took place.  There are many reasons for this.  The complainant

> stated that the sexual assault occurred in an abandoned rundown home. Investigating officers were unable to locate the house matching the description given by the complainant. I personally drove the street where this occurred and was unable to distinguish any particular house as several houses had been torn down and others were abandoned in that area. Therefore, any search warrant tor the house would have been fruitless and unproductive since there was no home to be searched,

(Dkt. 18-6, p. 12).

Based on the trial record, Hendricks's unsworn declaration, and Easterling's

affidavit, the state habeas trial court made the following findings of fact:

> 9. The trial court finds the affidavit of Easterling to be credible and the facts asserted therein to be true.
>
> . . .
>
> 12. Easterling did not find it beneficial or necessary to file a motion for a search warrant of the house where the sexual assault took place because officers were unable to locate the house as described. *See affidavit of Danny Easterling at 1*.
>
> 13. Easterling went to the area of town where the assault allegedly occurred and was similarly unable to locate the particular home, making any search warrant fruitless because there was no known location to search. *See affidavit of Danny Easterling at 1*.
>
> 14. Applicant fails to show that a motion for a search warrant of the house described by the complainant would have been granted, because there would be no way to include an address of the location to be searched.
>
> 15. Applicant fails to show that the location of the house was known by any party.

(Dkts. 18-6, pp. 30-31; 18-24, pp. 8-9). Based on these findings, the state habeas trial court determined that Hendricks had not demonstrated that a motion seeking a search warrant would have been granted had one been made. (Dkts. 18-6, p. 36; 18-24, p. 9). The court concluded that Hendricks had failed to show that Easterling's representation was deficient or that, but for any alleged deficiencies, the result of the proceeding would have been different. (Dkts. 18-6, pp. 37-38; 18-24, pp. 14-15). The Court of Criminal Appeals denied relief on the basis of the state habeas trial court's findings and conclusions and its own independent review of the record. (Dkts. 18-7, 18-25).

This Court's independent review of the record reveals that Easterling investigated the information provided to him by Hendricks. The victim told the first officer on the scene, Officer Jackson, that the assault occurred in a blue, one-story house in the 3500 block of Hutchins Street. Jackson testified that he checked the six abandoned houses in the 3500 block of Hutchins Street, but he did not find signs of a struggle in any of them. (Dkt. 17-6, pp. 139-40). He provided the location and description to Detective Pedro Moreno, who testified that he went to the 3500 block of Hutchins Street about a week after the assault and could not find a house matching the description given by the victim. (Dkt. 17-7, pp. 66-67). Because the house could not be identified, the officers did not obtain a search warrant for any location.

15

Easterling testified by affidavit that he drove to the 3500 block of Hutchins Street but could not find a house matching the description given by the victim. (Dkt. 18-6, p. 12). Because no house on the block matched the victim's description, he had no factual basis upon which to file a motion for a search warrant. And any motion seeking a search warrant for an unspecified location would have been denied. These facts do not support a conclusion that Easterling failed to investigate Hendricks's statement or that any motion seeking a search warrant would have been granted.

Hendricks raised this claim in his state habeas petition, and it was denied on the merits. In these circumstances, this Court reviews the claim under the "doubly deferential" standard. *See Rhoades*, 852 F.3d at 434. Under that standard, the question is not "whether defense counsel's performance fell below *Strickland's* standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. Here, the record shows that the state habeas court considered Hendricks's argument, properly applied the *Strickland* analysis, and concluded that Hendricks failed to demonstrate either deficient performance or actual prejudice as a result of Easterling's decision not to seek a search warrant for an unknown location. Hendricks has not met his burden on summary judgment to point to clear and convincing evidence that the state habeas trial court's factual findings were unreasonable in light of the record evidence, nor

has he shown that its application of the *Strickland* standard to the facts of his case was objectively unreasonable.  The respondent is therefore entitled to summary judgment in his favor on this claim.

### 2. Failure to Move to Quash the Probable Cause Complaint (Claim 1B)

In claim 1B, Hendricks alleges that Easterling provided ineffective assistance by failing to file a motion to quash the probable cause complaint as legally insufficient. (Dkt. 1, p. 5).  Hendricks alleges that had Easterling investigated his statement about the location of the crime, Easterling would have discovered that there was no blue, one-story vacant house in the 3500 block of Hutchins Street, contrary to the victim's statement.  (*Id.*).  Hendricks alleges that because that location did not exist, the probable cause complaint was legally insufficient because it did not identify the specific location where the offense occurred.  (*Id.*).  He alleges that Easterling should have filed a motion to quash the complaint as legally insufficient and that if such a motion had been filed, it would have been granted and the charges against him would have been dismissed. (Dkt. 2, p. 5).

The state habeas trial court made the following findings of fact concerning this claim:

16.   Applicant fails to show that the probable cause complaint is deficient.

17

17. The statutory requirements for location must only allege that the crime was committed within Harris County, Texas. *Hodge v. State*, 527 S.W.2d 289, 292 (Tex. Crim. App. 1975).

18. The probable cause complaint alleged that the sexual assault occurred within Harris County, Texas. 1 C.R. 10-11.

19. Applicant fails to show that a motion to suppress the probable cause complaint would have succeeded.

(Dkts. 18-6, pp. 30-31; 18-24, p. 9). Based on these findings, the state habeas trial court concluded that Hendricks had failed to show that Easterling's representation was deficient or that, but for any alleged deficiencies, the result of the proceeding would have been different. (Dkts. 18-6, pp. 36-37; 18-24, p. 9). The Court of Criminal Appeals denied relief on the basis of the state habeas trial court's findings and conclusions and its own independent review of the record. (Dkts. 18-7; 18-25).

As the state habeas court found, the probable cause complaints identify the location of the offense as Harris County, Texas. (Dkts. 17-2, p. 10; 17-3, p. 10). This was sufficient to satisfy the requirements of Texas law, which provides that an indictment need only allege that an offense was committed within a particular county. *See* TEX. CODE CRIM. PROC. art. 21.09 (holding that real estate need only be identified in an indictment by it general locality within in the county); *see also Santana v. State*, 658 S.W.2d 612, 614 (Tex. Crim App. 1983); *Hodge v. State*, 527 S.W.2d 289, 290 (Tex. Crim. App. 1975). Because this was sufficient to identify the location of the offense, any motion to quash on the basis of an insufficient

identification would have been denied. And counsel is not ineffective for failing to file a meritless motion. *See Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990) (holding that the performance element of *Strickland* does not require counsel to make futile motions or objections); *see also Amos v. Thornton*, 646 F.3d 199, 209-10 (5th Cir. 2011) (noting that a petitioner cannot establish prejudice from counsel's failure to file a motion when there is no reasonable probability that the trial court would have granted the motion had it been filed).

The record shows that the state habeas court considered Hendricks's argument, properly applied the *Strickland* analysis, and concluded that Hendricks failed to demonstrate either deficient performance or actual prejudice as a result of Easterling's decision not to file a motion to quash the probable cause complaints. Hendricks has not met his burden on summary judgment to point to clear and convincing evidence that the state habeas trial court's factual findings were unreasonable in light of the evidence in the record, nor has he shown that its application of the *Strickland* standard to the facts of his case was objectively unreasonable. The respondent is therefore entitled to summary judgment in his favor on this claim.

### B.    Failure to Challenge the Victim's Competency (Claims 2A, 2B, and 4)

In his second claim, Hendricks alleges that Easterling provided ineffective assistance of counsel by failing to challenge the victim's competency in several ways. (Dkt. 1, p. 7). He alleges that had Easterling challenged the victim's competency—both at the time of the assault and at the time of trial—the outcome of the proceeding would be different. (Dkt. 2, pp. 15-16).

### 1.    Failure to Request a Competency Hearing (Claim 2A)

In Claim 2A, Hendricks alleges that Easterling provided ineffective assistance of counsel by failing to request that the trial court hold a competency hearing before the victim testified at the restart of his trial. (Dkt. 1, p. 7). In support of his claim, Hendricks filed an unsworn declaration in which he alleged that he asked Easterling to request that the trial court inquire into the victim's competence to testify, but Easterling refused. (Dkt. 18-12, p. 26).

As relevant to his claim, the record shows that trial first began on December 8, 2015, and the State called the victim as its first witness. (Dkt. 17-5, p. 21). The victim's testimony on direct was disjointed and delusional. (*Id.* at 21-32). She testified that she did not want to be there and she frequently made what the reporter's record describes as "unintelligible noises." (*Id.*). After a short time, the court stopped the proceedings and asked the attorneys how they would like to

proceed. (*Id.* at 33-34). During the break, the victim was taken into protective custody after she appeared to be a danger to herself by walking into the street. (*Id.* at 36). The State asked for a continuance of the trial to allow time for the victim to settle down. (*Id.*). Easterling objected to any continuance, noting that because the victim was in custody she could return to the courtroom. (*Id.* at 37). The trial court noted that the victim "did not seem stable" and seemed to be responding to "internal stimuli." (*Id.* at 38). After considering the parties' arguments, the court determined that it would continue trial for thirty days to allow the victim to receive any treatment she needed. (*Id.*).

Trial resumed on January 11, 2016, with the original jury. (Dkt. 17-6, p. 1). The State again called the victim to testify, and she seemed lucid and answered questions appropriately. (*Id.* at 10-121). Easterling vigorously cross-examined the victim about her recollections of the assault, her mental health, the medications she was on, her ability to perceive the assault as it was occurring, her ability to remember the assault at the time of trial, and the discrepancies between the various statements she had made. (*Id.*). Easterling did not move for a competency hearing concerning the victim before she testified.

In response to Hendricks's allegation that Easterling should have requested a competency evaluation, Easterling testified by affidavit as follows:

21

> 9.  . . . When the trial first began the complainant was called as the
> state's first witness. It was obvious to everyone in the courtroom that
> she was not competent to testify as she was speaking incoherently and
> seemed to be in a state of psychosis. The trial court judge recessed the
> trial for some months for the complainant to be treated, evaluated and
> placed on anti-psychotic medication. The trial resumed later that year
> and the complainant was competent and stable when she testified the
> second time.  . . . I challenged the complainant's testimony vigorously
> and thoroughly due to her mental illness.
>
> . . .
>
> 12. I did not think it was beneficial or necessary to file a Motion for a
> Competency hearing for the complainant.  The trial court judge
> appropriately recessed the trial when the complainant first testified
> incompetently.  If the judge had not recessed the trial I would have
> requested some type of competency hearing but it was not necessary at
> that point.

(Dkt. 18-6, p. 13). After considering Hendricks's allegations, Easterling's affidavit,

and the trial record, the state habeas trial court found that Easterling had extensively

cross-examined the victim to highlight her confusion, contradictions, and

questionable recollections and that Hendricks had failed to show that any motion to

assess the victim's competence would have been granted. (Dkts. 18-6, pp. 31-32,

34-35; 18-24, pp. 9-10, 15-16). The court concluded that Easterling's decision to

proceed in this manner was not deficient nor did it prejudice the outcome of

Hendricks's case. (Dkts. 18-6, pp. 37-38; 18-24, pp. 14-15). The Court of Criminal

Appeals denied this claim based on the state habeas trial court's findings and

conclusions, as well as its own independent review of the record. (Dkts. 18-7; 18-25).

The "strategic decisions [of trial counsel] are entitled to a strong presumption of reasonableness." *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) (per curiam) (citing *Richter*, 562 U.S. at 104). "Defense lawyers have 'limited' time and resources, and so must choose from among 'countless' strategic options." *Id.* (quoting *Richter*, 562 U.S. at 106-07). These strategic decisions "are particularly difficult because certain tactics carry the risk of "harm[ing] the defense" by undermining credibility with the jury or distracting from more important issues. *Id.* (citing *Richter*, 562 U.S. at 108). Therefore, the "[i]nformed strategic decisions of counsel are given a heavy measure of deference," *Lamb v. Johnson,* 179 F.3d 352, 358 (5th Cir. 1999), and "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Lave v. Dretke*, 416 F.3d 372, 380 (5th Cir. 2005) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)).

The record shows that Easterling was aware of the competency issue, weighed the potential benefits of requesting a competency evaluation, and determined that it would be more effective to cross-examine the victim to permit the jury to determine her credibility in light of her prior testimony. In short,

Easterling weighed the various options and made a conscious and informed decision not to request a competency hearing. The state habeas court applied the *Strickland* analysis to these facts and concluded that Hendricks had failed to demonstrate either deficient performance or actual prejudice as a result of Easterling's decision not to request a competency hearing. Hendricks has not met his burden on summary judgment to point to clear and convincing evidence that the state habeas trial court's factual findings were unreasonable, nor has he shown that its application of the *Strickland* standard to the facts of his case was objectively unreasonable. The respondent is therefore entitled to summary judgment in his favor on this claim.

### 2. Failure to Retain a Psychiatrist to Examine the Victim and Assist Defense Counsel (Claims 2B and 4)

In Claim 2B, Hendricks alleges that Easterling provided ineffective assistance by failing to retain an expert psychiatrist to challenge the victim's competency. (Dkt. 1, p. 7). Similarly, in Claim 4, Hendricks asserts that Easterling should have retained a psychiatrist to "provide technical assistance to [Hendricks], evaluate the strength of [Hendricks's] defense, offer evidence of expert diagnoses as trial favorable to the defense, [and] to interpret medical reports and records to assist defense counsel." (*Id.* at 10). In his unsworn declaration, Hendricks alleges that he told Easterling that he wanted him to retain an expert to examine the victim's medical records and seek a mental evaluation of her "because she said some things

24

that showed that she was not in her proper state of mind." (Dkt. 18-12, p. 26).

Hendricks alleges that such an expert could have explained the victim's mental

illness to the jury and could have explained why she was not a credible witness.

(Dkt. 2, p. 13-14). He alleges that had such evidence been presented, the jury would

not have found him guilty. (*Id.* at 15-16).

> In response to these claims, Easterling alleged in his affidavit as follows:
>
> 9. I did not think it was beneficial or necessary to hire a medical expert
> to testify at trial. When the trial first began the complainant was called
> as the state's first witness. It was obvious to everyone in the courtroom
> that she was not competent to testify as she was speaking incoherently
> and seemed to be in a state of psychosis. The trial court judge recessed
> the trial for some months for the complainant to be treated, evaluated
> and placed on anti-psychotic medication. The trial resumed later that
> year and the complainant was competent and stable when she testified
> the second time. My investigation and decision not to hire a medical
> expert to examine the complainant was reasonable and necessary and
> not ineffective. I challenged the complainant's testimony vigorously
> and thoroughly due to her mental illness.
>
> . . .
>
> 11. I did not feel it was beneficial or necessary to file an *Ake* motion
> for a psychiatrist to evaluate the complainant's mental state. Please see
> my answer above for the reason why that was not necessary.

(Dkt. 18-6, p. 13). Based on Hendricks's declaration, Easterling's affidavit, and the

trial record, the state habeas trial court denied relief on these claims, finding that

Hendricks failed to show that a psychiatrist was available to testify at trial, what the

anticipated testimony would have been, and that the testimony would have been

beneficial to the defense. (Dkts. 18-6, p. 37; 18-24, p. 15). The Court of Criminal Appeals denied relief on this claim based on the state habeas trial court's findings and its own independent review of the record. (Dkts. 18-7; 18-25).

To allege a viable claim of ineffective assistance of counsel based on the failure to call witnesses, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). These requirements apply to both fact and expert witnesses. *Id.* Hendricks did not meet this burden because he did not identify any psychiatrist Easterling should have retained, did not set out the psychiatrist's proposed testimony, and did not show that any such proposed testimony would have been either admissible or favorable to his defense. *See, e.g., Schutz v. State*, 957 S.W.2d 52, 59-60 (Tex. Crim App. 1997) (en banc) (holding that an expert witness may not comment on a witness's credibility because "expert testimony must aid—not supplant—the jury's decision"). On this basis alone, the state habeas court's decision denying relief was not objectively unreasonable.

Moreover, the record shows that Easterling's decision not to retain a psychiatrist was a matter of trial strategy. Easterling testified that he was aware of the competency issue, weighed the potential benefits of retaining a mental health

expert, and determined that would not be necessary or helpful to retain a psychiatrist in this case. In sum, he made a conscious and informed decision not to retain a mental health expert. This strategic decision is "entitled to a strong presumption of reasonableness." *Dunn*, 141 S. Ct. at 2410. And given the nature and extent of Easterling's questioning of the victim, the record does not support a conclusion that this strategy was so ill-chosen as to permeate the trial with unfairness.

The record reflects that the state habeas court applied the *Strickland* analysis to these facts and concluded that Hendricks had failed to demonstrate either deficient performance or actual prejudice as a result of Easterling's decision. Hendricks has not met his burden on summary judgment to point to clear and convincing evidence that the state habeas trial court's factual findings were unreasonable, nor has he shown that its application of the *Strickland* standard to the facts of his case was objectively unreasonable. The respondent is therefore entitled to summary judgment in his favor on these claims.

### C.    Failure to Present a Proper Defense (Claim Three)

In his third claim, Hendricks alleges that Easterling provided ineffective assistance by presenting a defense of consent despite Hendricks's assertions that he had never met the victim and did not assault her. (Dkt. 1, p. 8). Hendricks alleges that the defense of consent undermined his true defense of actual innocence, which

would have resulted in the jury acquitting him had it been presented. (*Id.*). He also

contends that Easterling's decision to raise consent as a defense resulted in the court

permitting the State to introduce evidence of three extraneous offenses, which were

overly prejudicial and which would not have been admissible had such a defense

not been raised. (Dkt. 2, pp. 16-17).

In response to this claim, Easterling testified in his affidavit as follows:

5   The applicant never discussed consent as a defense with me in his
cases.   He continually told me that he was not guilty and had never met
the complainant before and did not go with her to some house to
sexually assault her.  He continued to declare his innocence even when
confronted with the very incriminating DNA evidence against him.

6.  I never discussed with the applicant presenting a consent defense
that might open the door to the applicant's lengthy criminal history.  I
recall telling him that I would challenge and cross examine the
complainant on her identification of him as a suspect.   I remember
doing that and raising some inconsistencies with her description as well
as challenging her credibility since she had severe mental illness.

7.  I did not feel like it was beneficial or necessary to pursue any
defensive strategies besides what I did at trial.  I cross examined each
witness and attempted to raise reasonable doubt that the applicant was
the actual perpetrator of these crimes.  Unfortunately for Mr. Hendricks,
the evidence was overwhelming from the complainant and the DNA
testing and that's why the jury convicted him.  Furthermore, I objected
to the 3 similar extraneous offenses that came into evidence in front of
the jury.  These extraneous offenses were very similar and involved the
sexual assault of homeless females in the same general area of the city
of Houston.  The Court of Appeals upheld the trial court's ruling on
allowing this evidence in over objection.

8   The applicant did tell me that he had never seen the complainant
before and he did not know her from any encounter.

(Dkt. 18-6, p. 13). After considering Hendricks's allegations, Easterling's affidavit,

and the record of trial, the state habeas trial court found as follows:

> 32. Applicant maintained that he had never seen the complainant before and did not know her from any encounter. *See affidavit of Danny Easterling at 2.*

> 33. However, Applicant was unable to provide any helpful details on why the DNA from her sexual assault test indicated he was the perpetrator.

> 34. Easterling did not find it beneficial or necessary to pursue other defensive strategies. *See affidavit of Danny Easterling at 2.*

> 35. Easterling cross-examined witnesses to attempt to raise reasonable doubt that Applicant was not the actual perpetrator. *See affidavit of Danny Easterling at 2.*

> 36. The evidence against Applicant was overwhelming, including the three extraneous offenses the State presented, over objection from Easterling, that were factually similar and occurred in the same area of Houston. *See affidavit of Danny Easterling at 2.*

> 37. Applicant fails to show Easterling actually used "consent" as a defense.

> 38. In his opening statement, Easterling alludes to the fact that the DNA is not accurate and does not mention a consensual encounter. III R.R. 19-20.

> 39. During his cross-examination of the complainant, Easterling focused on the complainant's disoriented state of mind and disjointed memories regarding the sexual assault. IV R.R. 29-102.

> 40. Easterling's closing highlighted weaknesses in the State's case, and never mentioned that the encounter between Applicant and the complainant was consensual. VIII R.R. 13-26.

41. Applicant fails to show where in the record Easterling used consent as a defense against his wishes.

(Dkts. 18-6, pp. 34-35; 18-24, pp. 12-13). Based on these findings, the state habeas trial court determined that Hendricks had failed to show that Easterling provided ineffective assistance by presenting a defense of consent. (Dkt. 18-6, pp. 37-38; 18-24, pp. 15-16). The Court of Criminal Appeals denied relief on the basis of these findings and its own independent review of the record. (Dkts. 18-7, 18-25).

As discussed above, the "strategic decisions [of trial counsel] are entitled to a strong presumption of reasonableness," *Dunn*, 141 S. Ct. at 2410, and "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Lave*, 416 F.3d at 380. The record shows that the victim identified Hendricks as her assailant, and he could not be excluded as a contributor of the DNA found on her during her post-assault medical examination. Despite the DNA evidence, Hendricks insisted that he was not the perpetrator. Easterling's defense strategy was to challenge all of the evidence, including testing the victim's credibility, questioning the reliability of the DNA evidence and the accuracy of the probability calculations connecting the DNA with Hendricks, and raising the possibility—based on the victim's testimony of a

30

rape the day before this assault—that her injuries were from a different incident. Nowhere does Easterling raise the defense of consent.

It is true that, during the discussion concerning the admissibility of the extraneous offense evidence, the trial court stated that Easterling had raised consent as an issue. (Dkt. 17-7, p. 129). The court noted that Easterling had questioned the victim about whether she had possibly agreed to sex in exchange for clothes or cigarettes and had simply forgotten due to her mental illness. (*Id.*). But the record shows that Easterling objected to this characterization of his questions and he objected to the court's use of those questions to permit the introduction of the extraneous offense evidence. (*Id.* at 141-42). Defense counsel argued that the extraneous offenses were not sufficiently similar to be admissible on the issue of identity, and it was the State—not defense counsel—that raised the issue of consent. (*Id.* at 143-45). Defense counsel responded to the State's argument on the consent issue, but Easterling never argued consent as a defense to the jury. (*Id.*). And, as the state appellate court found on direct appeal, the extraneous offenses were admissible based on the defense of identity—not consent. *See Hendricks*, 2017 WL 711741, at *3 ("Because of the high degree of similarity between all four sexual assaults, we hold that the extraneous-offense evidence was admissible under Rule 404(b) to prove Hendricks's identity."). This ruling contradicts Hendricks's

assertion that Easterling's alleged used of the defense of consent opened the door to the introduction of the extraneous-offense evidence.

The record shows that the state habeas court applied the *Strickland* analysis to these facts and concluded that Hendricks had failed to demonstrate either deficient performance or actual prejudice as a result of the defense presented by Easterling. Hendricks has not pointed to any clear and convincing evidence to show that the state habeas trial court's factual findings were unreasonable, nor has he shown that its application of the *Strickland* standard to the facts of his case was objectively unreasonable. The respondent is therefore entitled to summary judgment in his favor on this claim.

### D.   Failure to Preserve Trial Court Error for Appeal (Claim Five)

In his final claim, Hendricks alleges that Easterling provided ineffective assistance of counsel by "failing to preserve material issues for appellate review." (Dkt. 1, p. 12). His petition alleges as follows:

> Mr. Easterling made no objections at Mr. Hendricks' trial to any material issues that would be nonfrivoulous issues to be considered on appeal and warrant reversal of his conviction except the objection he made concerning a violation of Mr. Hendricks' Right to the Confrontation Clause.

(Id.). The petition does not identify any specific material issue to which Easterling failed to object. In his memorandum of law, Hendricks alleges that had Easterling

filed the motions or taken the actions identified in his federal habeas claims, any errors arising from those motions or actions would have been preserved for review. (Dkt. 2, pp. 25-28).

The record does not show that any of the proposed motions identified by Hendricks would have been granted had they been made or would have been a basis for reversal had they been denied. The record also does not show that, had Easterling preserved the alleged errors, Hendricks "would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 286 (2000) (explaining that to show prejudice arising from an appeal, the petitioner must show a reasonable probability that he would have prevailed on appeal). Hendricks has not shown that the state habeas court's application of the *Strickland* standard to the facts of his case was objectively unreasonable. The respondent is therefore entitled to summary judgment in his favor on this claim.

## IV.   **REQUEST FOR AN EVIDENTIARY HEARING**

In his memorandum in support of his petition, Hendricks requests an evidentiary hearing on his claims to "develop his facts." (Dkt. 2, p. 29). Under AEDPA, a habeas petitioner is entitled to have the federal court review new or additional evidence only when the petitioner shows that:

(A) the claim relies on-

33

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)(ii)–(B). But "even if all of these requirements are satisfied, a federal habeas court still is not *required* to hold a hearing or take any evidence." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022).

Hendricks's request for an evidentiary hearing fails to satisfy the elements of § 2254(e)(2). His claims do not arise from either a new rule of constitutional law or a newly discovered factual predicate. And he does not show that, but for the alleged constitutional errors, no reasonable factfinder would have found him guilty of the underlying offense. Because Hendricks has not satisfied the requirements of § 2254(e)(2), his request for an evidentiary hearing is denied.

## V.   **CERTIFICATE OF APPEALABILITY**

Habeas corpus actions under § 2254 require a certificate of appealability to proceed on appeal. 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order

34

that is adverse to the petitioner. To be entitled to a certificate of appealability, the petitioner must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard*, 542 U.S. at 276 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484). When the denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

Because Hendricks has not shown that reasonable jurists would find the Court's resolution of the constitutional issues debatable or wrong, this Court will not issue a certificate of appealability.

## VI.    <u>CONCLUSION</u>

For the reasons explained above, the Court **ORDERS** as follows:

1. The respondent's motion for summary judgment (Dkt. 16) is **GRANTED**.

2. Hendricks's petition for a writ of habeas corpus (Dkt. 1) is **DENIED**, and this

   case is dismissed with prejudice.

3. Any pending motions are **DENIED** as moot.

4. A certificate of appealability shall not issue.

SIGNED at Houston, Texas, on _____Nov 8_____, 2022.

DAVID HITTNER
UNITED STATES DISTRICT JUDGE